VANDEVENTER, Respondent, v. GOSS, Appellant.

St. Louis Court of Appeals, January 30, 1906.

1. **HUSBAND AND WIFE:** Rents and Profits of Wife's Land: Marital Rights. A husband, married in 1869, was entitled to the rents and profits of his wife's land—not settled to her sole and separate use—and was not indebted to her for rents and profits of her land collected by him after the marriage.

2. **FRAUDULENT CONVEYANCES:** Voluntary Conveyance: Burden of Proof. A voluntary conveyance is presumptively fraudulent as to existing creditors and the burden is on the donee to establish the validity of such a conveyance.

3. ————: Husband and Wife: Solvency. Whether a man, who makes a voluntary conveyance to his wife, is solvent so as to make the conveyance valid as against existing creditors, depends on whether he has ample property, besides that conveyed, if sold at forced sale, to meet his obligations and the cost of collecting them by process.

4. ————: ————: —————. In a proceeding by a judgment creditor of the husband against the wife as garnishee, the evidence is examined and it is *held* the husband was insolvent so as to render void the gift of a debt which she owed him.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby*, Judge.

AFFIRMED.

*T. P. Bashaw* and *J. H. Whitecotton* for garnishee, appellant.

Where one is not insolvent and a conveyance made by him does not render him so, such conveyance is not fraudulent as to creditors although there be no consideration therefor. Fehling v. Bursch, 165 Mo. 144. But if it be held that the assignment to the garnishee was without consideration, yet a voluntary conveyance is not

void as to existing creditors, but is merely presumptively fraudulent as against them, and proof by the donee that the donor had ample property to meet all his debts at the time of the conveyance rebuts the presumption of a fraudulent intent. Walsh v. Ketchum, 8 Mo. 427, and cases cited. The burden of proving fraud is on the party who seeks relief against an alleged fraud. It is never presumed, especially when the transaction may be fairly reconciled with honesty. Robinson v. Dryden, 118 Mo. 534; Bank v. Worthington, 145 Mo. 91. And other cases too numerous to cite.

*R. N. Bodine, F. W. McAllister* and *W. T. Ragland* for respondent.

At the time appellant inherited the land, and at the time she married defendant, the common law fixing the husband's interest and estate in his wife's lands had not been modified or abrogated by statute. So that defendant from the date of his marriage until the land was conveyed had an estate of freehold therein, a vested estate in possession during the joint lives at least of himself and his wife. He was entitled to the usufruct thereof and to all the rents and profits. Flesh v. Lindsay, 115 Mo. 17; Dyer v. Wittler, 89 Mo. 92; Kanaza v. Railroad Co., 76 Mo. 214; Wilson v. Garaghty, 70 Mo. 517; Arnold v. Willis, 128 Mo. 145; Dillenberger v. Novisberg, 10 Mo. App. 465. If the sale was voluntary it it immaterial whether the defendant was insolvent. A voluntary transfer of property by a husband to his wife, without any pecuniary consideration moving from the wife, is void as to all existing creditors of the husband. Woodson v. Pool, 19 Mo. 340; Potter v. McDowell, 31 Mo. 62; Pawley v. Vogel, 42 Mo. 291;. Jordon v. Buschmeyer, 97 Mo. 94; Patten v. Bragg, 113 Mo. 601; Lins v. Lenhardt, 127 Mo. 271; Lander v. Ziehr, 150 Mo. 403; Halstead v. Mustian, 166 Mo. 488.

STATEMENT.—The appeal in this case was taken from a judgment for $1,597.02 against Emma C. Goss, who was summoned as garnishee on an execution issued on a judgment for $5,073.94 against her husband, John P. Goss, the defendant, and in favor of the plaintiff, who is her brother. The latter judgment was rendered May 2, 1902, and executions had been issued on it and returned unsatisfied prior to the judgment against the garnishee. The litigation between the principal parties, Vandeventer and Goss, arose out of a partnership which existed between these men under the firm name of Goss & Vandeventer. Said parties were engaged in farming, stock raising and merchandising in the town of Florida, Monroe county, and its vicinity for twenty-one years. The partnership ceased business in 1893, at which time the firm owned a stock of merchandise in Florida, some town lots therein and about 1,200 acres of land in the county. When they divided their assets, Goss acquired the merchandise and town lots and about 600 acres of the land. Goss continued in the mercantile, farming and stock raising business for several years after the lapse of the partnership. In 1895 or 1896, Vandeventer instituted a suit for a dissolution of the partnership and an accounting, alleging that on an accurate statement of the firm's affairs, the defendant Goss would be found to owe him $25,000. This equity suit was not finally disposed of until 1902, in which year, as stated above, Vandeventer obtained judgment for more than $5,000. It will be observed that the suit was pending in the circuit court of Monroe county for about six years, and meanwhile Goss was conducting his mercantile and farming operations. It was shown by the testimony of Harry M. Goss, son of the defendant and the garnishee, that the firm purchased all the merchandise and fixtures contained in the store of John P. Goss for $2,396; that the firm of H. M. Goss & Company was composed of Harry M. Goss and his mother, Emma C. Goss, and that by the terms of the purchase, he acquired one-third of the mer-

cantile assets and his mother two-thirds; that he paid his father $800 in cash for the one-third interest. Said witness did not testify what his mother paid for her two-thirds, nor was there any direct evidence on this question. Mrs. Goss alleges in her answer that her husband owed her $2,400 at the time of the purchase and that she gave him credit on this indebtedness for $1,597.02 in payment for her two-thirds interest in the goods and fixtures; but neither she nor anyone else gave testimony to support those allegations. The nature of the indebtedness she claimed to hold against her husband, bears on the decision of the points raised on the appeal and will be disclosed in the course of our statement. The testimony shows that for several months prior to the sale of the establishment to H. M. Goss & Company, John P. Goss had been conducting the business in the name of his wife, buying goods and having them shipped in her name. She swore this was done without any authority from her and no explanation is offered of why Goss did it. After the new firm had carried on the business awhile, the son bought his mother's interest for about $500; but in the meantime the stock had been reduced. According to the testimony of Harry M. Goss, his father, about the time of the sale of the store, began to dispose of the personal property on his farms including the agricultural implements and live stock. Harry swore he bought some of the property and sold some for his father, to whom he paid the money received. What his father did with the money, there is no testimony to show. Of the 600 acres of land set apart to John P. Goss at the cessation of business by Goss & Vandeventer, 400 acres, consisting of the most valuable land, was so deeply incumbered by mortgages that it brought less than the aggregate amount of the incumbrances, as Harry Goss swore. Two hundred acres of the remaining land was less valuable and was likewise heavily incumbered in proportion to its value. It sold for about $100 more than the incumbrance. By the time the plaintiff's suit passed

into judgment, practically all of defendant's personal property had been disposed of either to his son and wife or to other persons, and about all the assets remaining in his own name and subject to execution were the incumbered lands and some lots in the town of Florida. These properties were levied on and, being insufficient to satisfy the judgment, Emma Goss was summoned as garnishee. One of the interrogatories propounded to the garnishee inquired concerning her acquisition of the stock of goods and the consideration she gave for it. She answered as follows:

"In answer to interrogatory four, garnishee says that at the time of the purchase of the stock of goods, wares and merchandise, from said John P. Goss by said firm of H. M. Goss & Co., and the payment of two-thirds of the purchase price by garnishee, she, said garnishee, paid her said two-thirds to said John P. Goss on said 19th day of February, and made said payment in the following manner, to-wit:

That on said day John P. Goss was indebted to garnishee in a large sum of money to-wit: The sum of $2,400 for the rents and profits of certain real estate owned by garnishee, being an undivided one-third interest in three hundred and twenty acres of land inherited from the estate of garnishee's father, William M. Vandeventer, deceased, located near Florida, in said Monroe county, and credit was by said garnishee on said day given to John P. Goss on account of said rents and profits theretofore received by him during a period of twenty-four years next preceding said time; said credit amounting to the sum of $1,597.02, and was accepted by said John P. Goss in discharge of said two-thirds of said purchase price." A reply to the answer was filed by the plaintiff in which the statements contained in the above excerpt were denied generally and the allegation made that the goods were transferred to appellant without any consideration in order to hinder and defraud defendant's creditors, several of whom had suits pending against him.

Evidence was introduced by the garnishee for the purpose of showing the defendant was solvent in February, 1900, when he sold the stock of goods to his wife and son. The highest estimate of his assets at the time was given by his son Harry. We omit the six hundred and odd acres of land Goss owned, for his son swore the land was so heavily mortgaged that it barely realized the amount of the incumbrances, and it appears that at the foreclosure sales it brought a good price per acre. His other assets were valued as follows:

| | |
|---|---:|
| House and lots in Florida | $1,200 |
| Store accounts not sold to H. M. Goss & Co. | 1,000 |
| Bank stock | 800 |
| Stock of merchandise | 2,396 |
| Horses and mules | 800 |
| Twenty-five head of cattle at $35 a head | 875 |
| Forty-five head of sheep at $6 a head | 270 |
| Plows | 200 |
| Forty tons hay at $5 a ton | 200 |
| Three wagons worth $30 each | 90 |
| Two wagons worth $15 each | 30 |
| Six sets harness at $15 each | 90 |
| Ten sets harness at $8 each | 80 |
| One bull | 40 |
| 450 bbls. corn at $1.50 per bbl | 675 |
| | $8,746 |

The court refused all the instructions requested by the garnishee and instructed the jury in effect to return a verdict for the plaintiff and assess his recovery at two-thirds of the agreed purchase price, if they believed a price for the stock of goods was agreed on between the de. fendant and his wife at the time of the sale; or, if they found no purchase price had been agreed on, at two-thirds of the market value of the stock at the time of the transfer. Pursuant to the direction of the court, the jury re-

turned a verdict for the plaintiff for the sum of $1,-597.02. Judgment was entered on the verdict and the garnishee appealed to this court.

GOODE, J. (after stating the facts)—The first point made against the judgment is that the court below erred in refusing to instruct that if, on account of rents and profits he had received from her land, defendant owed the garnishee when the goods were sold, more than the alleged consideration she was to pay for a two-thirds interest in the stock, and it was agreed between the garnishee and defendant that the consideration for her purchase was a credit to be entered on what the defendant owed her, then the plaintiff could not recover unless it appeared that the defendant had transferred the stock with the intention of hindering and delaying his creditors and the garnishee participated in the fraudulent purpose. What was shown in regard to this land matter was that in 1866, the garnishee inherited from her father a one-third interest in 320 acres of land. Her brother, the plaintiff, and a sister inherited the other two-thirds. When Goss married her in 1869, he went into possession of her interest, and during his partnership with Vandeventer in farming and stock raising, the land was used in the business. Mrs. Goss' interest was treated as a part of her husband's contribution to the capital of the firm. When the partnership ceased business in 1893, and a division of assets occurred, the garnishee's interest was sold or traded to Vandeventer and she joined in the deed. The only evidence even remotely relating to the claim Mrs. Goss now prefers against her husband for the rents and profits of the land is, that in 1893, when the firm of Goss & Vandeventer quit business and the land was divided, Goss said she "should have her part." There was no allusion to the rents he had received, and the expression quoted can hardly be taken as referring to rents. The natural inference is that Goss meant his wife should receive her part of what was paid or given in exchange

for the land. As the law stood at the time of their marriage, the defendant was entitled to the rents and profits of his wife's land (not settled to her sole use) though the rents were not subject to his debts. Therefore he cannot be held to have become indebted to the garnishee from the bare fact that he collected the rents and profits of lands she owned when they were married. [Arnold v. Willis, 128 Mo. 145, 30 S. W. 517; Dyer v. Wittler, 89 Mo. 92, 14 S. W. 518.] We concede that he might have waived his marital right to the use and profits of the land in favor of his wife, but there is no evidence that he did so. In truth, there is no evidence whatever in the record that Goss owed his wife anything on account of the land matter, or on any other account; or that she understood he did. Those long past transactions appear to have been seized on as a makeshift consideration for the transfer of the merchandise to the garnishee. The conclusion is that if she promised to pay defendant $1,597.02 for a two-thirds interest in the merchandise, she owed him the whole sum when garnisheed and must answer to plaintiff as his judgment creditor, unless there is some valid ground for holding otherwise.

It is insisted that even if the transfer of the merchandise to the garnishee was wholly voluntary and without any consideration, it was valid against the exising creditors of Goss unless he was insolvent at the time the transfer was made or made it with an intent to hinder his creditors; and that as there was evidence to prove he was solvent, the issue was for the jury and the court erred in directing a verdict. No doubt, the mere fact that an individual was indebted is not, in this jurisdiction, sufficient to conclusively brand a voluntary conveyance of property as fraudulent. It is presumptively so and the burden is on the donee to establish its validity. Whether or not it will be treated as fraudulent, depends on the aggregate value of his assets as compared with what he owed. [Fehlig v. Busch, 165 Mo. 144, 65 S. W. 542; Walsh v. Ketchum, 84 Mo. 427, 430;

Bump, Fraud. Con. (21 Ed.), pp. 285, 286.] If his indebtedness was slight in comparison with his property and after the conveyance he had ample resources left to pay his debts, the conveyance was not necessarily fraudulent; and under those circumstances, whether it was so or not would depend on the intention of the donor. [Grimes v. Russell, 45 Mo. 431; Walsh v. Ketchum, 84 Mo. 427; Updegraff v. Theaker, 57 Mo. App. 45.] Though a man is indebted in a small amount if he has large assets, he may make a reasonable provision out of his substance for a wife or child, if he does so in good faith, and with no intention to hinder his creditors and the transfer does not operate to hinder or delay them. These principles are invoked by counsel for the garnishee, and on them is rested the proposition that the court erred in refusing to instruct as requested by the garnishee, and in taking the issues from the jury. This contention consists badly with the pleadings. The garnishee was called on to answer regarding her title to the stock of goods bought from her husband and the consideration she paid for it; and, instead of answering that her husband was unembarrassed by debts at the time and in good faith voluntarily transferred the stock to her as a gift, she answered that she bought it and paid a valuable consideration; stating the form in which the payment was made, which we have already related. In his reply, the plaintiff traversed the issue thus tendered and alleged that the transfer of the merchandise was without consideration and made to defraud the plaintiff. In view of the issues, perhaps the proposition now invoked by appellant's counsel regarding Goss's right to transfer the goods to her without consideration, cannot rightly be considered. But it is always preferable to dispose of cases on their merits and, as we think the proposition unsound, we will answer it. The argument for the garnishee on this branch of the case is that if Goss was solvent at the time of the transfer, and acted in good faith, the transfer was valid. Insolvency of

the grantor will render such a conveyance voidable at the suit of existing creditors; but bare solvency, in the commercial use of that word, will not always validate it even when the motive was honorable. For the transfer to stand against the claims of existing creditors, it must appear that when made, the grantor was in unembarrassed circumstances and possessed ample property, after the transfer, to meet his obligations. Though it may be shown by a nice calculation that his remaining assets somewhat exceeded his indebtedness, this is not enough to establish the validity of the transfer. It must be shown affirmatively that what he had left, would yield at a forced sale enough to meet his liabilities and the costs of collecting them by process. Now, solvency is generally understood to mean that a person is able to pay his debts as they mature. [Moore v: Carr, 65 Mo. App. 64.] The term is used, too, in a sense importing that one's property is adequate to satisfy his obligations when sold under execution. Only clear solvency in the latter sense will unhold a voluntary conveyance against preexisting debts. [Potter v. McDowell, 31 Mo. 62; Eddy v. Baldwin, 32 Mo. 369; Land v. Kingsberry, 11 Mo. 402; McDonald v. Cash, 45 Mo. App. 66.] An examination of the decided cases will demonstrate that rarely, or never, has a voluntary transfer of property by a debtor been upheld against his creditors, except when the circumstances of the debtor, at the date of the conveyance, clearly established that the transaction would not endanger, hinder or delay the collection of his obligations, but that his remaining assets were unquestionably ample to meet them. [Bump, Fraud. Con. (21 Ed.), secs. 254 to 263 inclusive. Updegraff v. Theaker; Walsh v. Ketchum and Fehlig v. Busch, supra; 14 Am. and Eng. Ency. Law (2 Ed.), p. 307 and citations. And see the elaborate opinion in Van Wyck v. Seward, 18 Wend. 375, 391 wherein the law of the matter is gone over thoroughly on principle and authority.] In a case not dis-

tinguishable from this one, the above rules were declared by the Supreme Court. [*Potter v. McDowell,* supra.]

We will next consider what the evidence shows regarding the financial condition of appellant's husband in February, 1900, when he transferred his stock of goods; and in making this inquiry we will accept as true the testimony of Harry M. Goss, which is the most favorable to the contention that the defendant was unembarrassed at the time, and greatly exceeds the other estimates of his means. That witness showed, at most, available assets amounting in round numbers, to $8,750. The merchandise given to his wife (her two-thirds of the stock) was invoiced at $1,597; and, deducting that sum, Goss had left $7,153 of miscellaneous property, largely farming implements and farm products. Plaintiff's action for $25,000 was pending at the time, and it resulted in a judgment for over $5,000. Goss owed at least three other debts whose amounts are not stated; and it seems that suits were pending against him for one or more of them. Under these circumstances, and considering the nature of Goss's assets, and the prices at which such property sells under execution, the conclusion is palpable that he was in embarrassed circumstances, threatened with judgments and that after the gift of merchandise to his wife, he was left without ample assets to meet his liabilities to creditors, including plaintiff. The transfer was bound to hinder and delay his creditors in collecting their debts and therefore the court did not err in holding the transfer void in law at plaintiff's instance.

We have said nothing regarding Goss' intention in disposing of his personalty in 1900, but it is scarcely to be doubted that it was to evade payment of his debts. The judgment is affirmed. *Bland, P. J.,* and *Nortoni, J.,* concur.