**WILKINSON et al. v. LIVINGSTON.**
No. 8960.

Circuit Court of Appeals, Eighth Circuit.
Nov. 25, 1930.

James R. Claiborne, of St. Louis, Mo., for appellants.

Alfred C. Wilson, of St. Louis, Mo. (Charles R. Hamilton and Alva C. Trueblood, both of St. Louis, Mo., on the brief), for appellee.

Before KENYON, BOOTH, and GARD-
NER, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a decree in favor
of the trustee in bankruptcy of Wilkinson
Clothing & Furnishing Goods Company in a
suit brought by him under section 70e of the
Bankruptcy Act (11 USCA § 110(e), against
the appellants and others, to set aside an as-
signment of a lease alleged to have been made
by the bankrupt company in fraud of cred-
itors, more than four months prior to bank-
ruptcy proceedings.

There was substantial evidence tending to
prove the following facts: the Wilkinson
Clothing & Furnishing Goods Company
(hereinafter called the company) was a cor-
poration which for several years prior to
1924 had operated a store at the premises
known as 707–709 Olive street, St. Louis,
Mo. Drane Wilkinson, one of the appellants,
was president, general manager, and owner
of the majority of the stock of the company.
Appellant J. E. Bishop was vice president of
the company, owned one share of stock, and
was attorney for the company. The third
stockholder was a brother of Wilkinson.
These three men constituted the board of di-
rectors.

The company held a lease on the premises,
dated October 14, 1922, running from March
1, 1923, to March 1, 1931. The rental was
$18,000 for the first year; $20,000 for the
second year; $22,000 for the third year; and
$25,000 for the last five years.

The business of the company for the year
1923 had not been successful. There had
been a loss of about $21,000. Creditors were
pressing for payment. December 15, 1923,
Drane Wilkinson wrote to the largest cred-
itor, to whom was owing about $19,000, set-
ting out the situation and promising to make
piece-meal payments.

A meeting of the stockholders was held
February 1, 1924, the three stockholders be-
ing present. The business of the company
was discussed. Drane Wilkinson advocated
liquidating the business and starting over
again in a new store. His brother advocated
that there should be no interruption in carry-
ing on the business. A resolution was passed
that the company should assign its lease to
Drane Wilkinson. The consideration men-
tioned in the resolution was: (1) Moneys
advanced up to February 1, 1924, to operate
the business; (2) continuing to act as in-
dorser on the company's paper "now in bank
and in the future"; (3) continuing in charge
of the business in the future whether or not
the earnings were sufficient to pay his salary
regularly.

February 5, 1924, the lease was formally
assigned. The assignment made no mention
of any consideration.

It may be noted that, though the books
of the company showed that it owed Drane
Wilkinson on February 1, 1924, $2,282.45,
yet no cancellation of any part of this amount
is shown as having been made as considera-
tion for the amount of the lease. Drane Wil-
kinson testified, however, that $1,700 which
he had advanced was additional to the amount
shown on the books.

It may be noted, further, that there is no
showing on the books of the company of any
notes for new loans being made by the com-
pany and indorsed by Drane Wilkinson after
February 1, 1924. Drane Wilkinson testified
that he thought he indorsed new notes after
February 1, 1924.

It may be noted still further that Drane
Wilkinson did not serve without salary after
February 1, 1924, but drew his salary up to
July 1, 1924, though the business was closed
out by June 10, 1924.

Shortly after February 5, 1924, through
the efforts of J. E. Bishop and Drane Wil-
kinson, an agreement was made with the cred-
itors of the company whereby the creditors
accepted 60 per cent. of the amounts due
them, payable 25 per cent. in cash March 10,
1924, and the balance by three promissory
notes: One for 15 per cent., and two for 10
per cent. each, payable respectively June 10,
September 10, and December 10, 1924. The
cash payment was made; none of the notes
was paid.

A "going out of business" sale was put
on, commencing in March, 1924, and by June
10, 1924, the stock of goods had been closed
out. The company continued in possession
of the premises and paid the rent up to July,
1924.

By June 10, 1924, there was nothing left
but about $1,200 balance in the bank, and ac-
counts receivable having a face value of $6,-
000. Some of these had been written off the
books; $3,400 of them were in attorneys'
hands for collection. On June 10, 1924, the
bank applied the balance in its hands upon
notes of the company.

Meanwhile, on April 18, 1924, Drane Wil-
kinson had sublet a portion of the premises
for a term beginning September 1, 1924, and
ending February 28, 1931. The rental un-

der this sublease fell short of the rental under the original lease by about $250 per month.

An arrangement was made by Drane Wilkinson with the defendant American Trust Company by which it advanced the rent due under the original lease for July and August, and the deficiency of rental accruing for several months thereafter. The trust company also advanced about $1,800 for repairs.

The fixtures were sold to the sublessee for $2,700 on April 28, 1924. $500 of this was paid in cash; $2,200 on June 5, 1924. The latter sum was used by the company to pay salaries and the rent for June, 1924.

Drane Wilkinson also sublet the remainder of the premises for a term commencing December 1, 1924, and running to March 1, 1931. The combined rental of the two subleases was more than rental under the original lease. The difference increased until it amounted to nearly $6,000 per annum during the last five years of the leases.

On June 18, 1924, a creditors' petition in bankruptcy was filed against the company, and a receiver was appointed. Adjudication was had July 12, 1924, and a trustee was elected September 10, 1924.

On June 20, 1924, Drane Wilkinson executed an "assignment of rents and power of attorney" to J. H. Farish, as trustee. Farish was to take charge of the premises covered by the two subleases, collect the rents, pay the rent under the original lease, and apply the balance on debts owed by Drane Wilkinson as follows: $5,098.65 to American Trust Company; $2,750 to Martin & Breitt; $2,500 to Bishop & Claiborne. The amount owing to the American Trust Company was on account of indorsement of notes by Drane Wilkinson for the company, which were held by the trust company. The amount owing Martin & Breitt was for commissions for finding a tenant for the portion of the premises first sublet. The amount owing to Bishop & Claiborne was for legal services rendered Drane Wilkinson in connection with the assignment of the original lease to him, the drawing of the first sublease, drawing of the assignment of rents to Farish, and other matters.

Farish continued to collect the rents under the two subleases and to disburse the net balance in accordance with the terms of the trust.

The advancements by the trust company were paid off gradually; the debt to the trust company of $5,098.65 from Drane Wilkinson was paid off; the amount owing Martin & Breitt of $2,750 and interest was paid.

On November 27, 1929, there was a credit balance with the trust company of $3,518.20; but the debt to Bishop & Claiborne had not been paid.

The complaint was filed in the present suit by the trustee on December 14, 1925; the case was tried in December, 1929.

Claims against the bankrupt estate have been allowed in the sum of $26,205. The trustee has collected from the assets of the estate and now holds $1,092.

On the trial, the attorneys for the plaintiff trustee made the following statement: "As far as the defendant, American Trust Company, and the defendants, Arthur S. Martin and Fred C. Breitt, partners, trading as Martin & Breitt, are concerned, plaintiff wishes to announce that so far as these defendants are concerned, the plaintiff is not asking for any affirmative relief except that in the event of a decree for the plaintiff, that the Court find that any claims which these defendants have in the subject matter of this action have been satisfied and that these defendants have no further right, title or interest in the subject matter of this suit."

This statement was made pursuant to an agreement theretofore entered into by the trustee in which it was stipulated: " * * * That no question was to be raised by any parties to the stipulation as to the legal rights of the American Trust Company to such reimbursement of advancements and to the payment of its indebtedness, and further, that out of said balance said bank might pay to Martin & Breitt Real Estate Company the sum of $2750.00, with interest thereon from April 18, 1924, and that the plaintiff would ask no judgment or decree against the American Trust Company or Martin & Breitt Real Estate Company, except that there should be a finding and decree (in the event plaintiff were successful) that such parties' claims had been fully paid and satisfied and that such parties had no further interest in said leasehold."

The foregoing statement and stipulation were made because, as stated by counsel for the trustee: " * * * There was no evidence that on February 1, 1924, when the corporation arranged to assign and transfer the leasehold to Drane Wilkinson individually that either the American Trust Company or Martin & Breitt were present or knew of the circumstances, conditions or considerations under which the transfer was made, nor was there any evidence that information with

respect to this subject came to these defendants at any subsequent time. ˟ ＊ ＊ ”

The decree entered by the trial court adjudged: That the assignment of the lease by the company to Drane Wilkinson was null and void; that Drane Wilkinson and Farish held the original lease and subleases in trust for the plaintiff trustee in bankruptcy, and that they should transfer the same to plaintiff; " ＊ ＊ ＊ that respondents John E. Bishop and James R. Claiborne, had knowledge of the conditions that existed when the said original lease was assigned to respondent Drane Wilkinson and that said respondents, John E. Bishop and James R. Claiborne, have no right, title or interest in or to the said original lease and/or any subleases or assignments thereof, immediate or remote, or to any of the rights, interests or rents accruing therefrom, and that the same stand discharged of any claim or interest whatsoever in favor of the said respondents, John E. Bishop and James R. Claiborne; ＊ ＊ ＊ ” that the American Trust Company should pay over to the plaintiff the amount of the balance standing in its hands; " ＊ ＊ ＊ that respondent, Drane Wilkinson, be and he is hereby required to account and pay over to the complainant the net amount of rents and profits realized by him from the said premises and utilized for the payment of his individual debt to the American Trust Company, which the Court finds is the sum of $5,098.65, together with interest thereon at the rate of 6% per annum from the 20th day of June, 1924, amounting to $1,555.15, a total of $6,653.80, and that complainant have and recover judgment against the respondent, Drane Wilkinson, for the said amount of $6,653.80. ＊ ˟ ＊ ”

█ Motion was made by Drane Wilkinson in the trial court to dismiss the bill for laches on the part of the trustee. The motion was denied, and this ruling is assigned as error. It is true, the trustee did not commence the present suit until some fifteen months after he was appointed; and after the filing of the bill, the case was not brought on for trial for about four years. It must be borne in mind, however, that the gist of the bill is that, by reason of the fraudulent character of the assignment of the lease to Drane Wilkinson, he became a trustee ex maleficio. Time did not run in favor of Drane Wilkinson as such trustee until the discovery by the trustee in bankruptcy of the fraudulent character of the transaction. Perry on Trusts (7th Ed.) § 860, et seq.; Newman v. Newman, 60 W. Va. 371, 55 S. E. 377, 7 L. R. A. (N. S.) 370,

374 and note; 15 Am. & Eng. Encyc. of Law (2d Ed.) pp. 1205, 1207; 37 C. J., p. 909, et seq., § 270; Pomeroy's Equitable Remedies, §§ 26–28; see, also, Freeland v. Williamson, 220 Mo. 217, 119 S. W. 560.

█ Just when such discovery was made does not appear from the record. May 26, 1925, was the date of the last examination of defendant Wilkinson before the referee. December 14, 1925, the referee authorized the trustee to bring suit, and the bill was filed the same day. We cannot say that laches in bringing the suit was disclosed on the record.

█ Of course, there may be laches in prosecuting a suit as well as in beginning it. 21 C. J., p. 215, § 214; Taylor v. Salt Creek, etc., Co., 285 F. 532, 542 (C. C. A. 8); Wells Fargo, etc., Bank v. Barnette (C. C. A.) 298 F. 689, 43 A. L. R. 916 and note 921. And it would seem that four years was an unusually long time within which to bring a cause to trial.

█ Time alone, however, does not constitute a defense of laches. There is the further element of disadvantage to the other party by reason of the negligent delay. Taylor v. Salt Creek, etc., Co., supra, page 538 of 285 F., and cases there cited and quoted; 21 C. J., p. 219 et seq., §§ 218, 219; Perry on Trusts (7th Ed.) § 855a; Wetzel v. Minn., etc., Co., 65 F. 23, 26 (C. C. A. 8).

█ The only prejudice suffered by Drane Wilkinson that is suggested is that he has lost the right to prove his claim in the bankruptcy proceedings by reason of the delay. There is no merit in the suggestion. Drane Wilkinson could file his claim after the assignment of the lease to him was set aside. Keppel v. Tiffin Savings Bank, 197 U. S. 356, 25 S. Ct. 443, 49 L. Ed. 790; Barks v. Kleyne, 15 F.(2d) 153 (C. C. A. 8).

█ On the merits, it is contended that the assignment of the lease to Drane Wilkinson was not such a conveyance as could have been set aside by creditors.

The test is to be made under the provisions of the local law. Sieg v. Greene, 225 F. 955, Ann. Cas. 1917C, 1006 (C. C. A. 8); Engstrom v. Lowell (C. C. A.) 281 F. 973; Anderson v. Gray (C. C. A.) 284 F. 770.

Section 2276, Rev. St. Mo. 1919, reads as follows: "Every conveyance or assignment in writing, or otherwise, of any estate or interest in lands, or in goods and chattels, or in things in action, or of any rents and profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the

rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions, damages, forfeitures, debts or demands, or to defraud or deceive those who shall purchase the same lands, tenements or hereditaments, or any rent, profit or commodity issuing out of them, shall be from henceforth deemed and taken, as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void."

Under this statute, the courts of Missouri have held:

One is insolvent when he lacks the ability to pay his debts in the ordinary course of business. May v. Gibler, 319 Mo. 672, 4 S.W. (2d) 769, 771.

Solvency means that a party is able to pay his debts as they mature, or that they may be made by process. Moore v. Carr, 65 Mo. App. 64; Vandeventer v. Goss, 116 Mo. App. 316, 91 S. W. 958.

If a debtor is in embarrassed circumstances and makes a voluntary conveyance, and is afterwards unable to meet debts owing at the time the conveyance is made in the ordinary course prescribed by law, such conveyance is void as to those debts. Lionberger v. Baker, 88 Mo. 447.

If, at the time of a voluntary conveyance, the grantor is insolvent, the deed is fraudulent, and evidence that no fraud was intended cannot change the character. Johnson v. Murphy, 180 Mo. 597, 614, 79 S. W. 909.

The mere fact that a party is indebted is not sufficient to brand a voluntary conveyance of property as fraudulent, as it will depend on the aggregate value of his assets compared with what he owed. Vandeventer v. Goss, supra, page 323 of 116 Mo. App., 91 S. W. 958.

To protect a voluntary conveyance, the debtor must be presently able to pay his debts and be in such condition of his means that payment can be enforced by process. Hoffman v. Nolte, 127 Mo. 120, 137, 29 S. W. 1006.

A conveyance by an insolvent debtor, in order to be effectual against existing creditors, must be supported by a subsisting valuable consideration. Simon v. Norton, 56 Mo. App. 338, 341. See, also, Munford v. Sheldon, 320 Mo. 1077, 9 S.W.(2d) 907.

Viewed in the light of the foregoing decisions under the Missouri statute, we think the evidence in the case at bar clearly shows that, at the time of the assignment of the lease to Drane Wilkinson, the company was insolvent; that the assignment was without valuable consideration and was a voluntary conveyance; that Drane Wilkinson was fully acquainted with the financial condition of the company. But even if it could be held that the evidence did not clearly show that the assignment of the lease was a voluntary conveyance within the meaning of that term under the Missouri statute and decisions, nevertheless the circumstances clearly proven by the evidence—insolvency, knowledge of the insolvency by the grantee in the conveyance, the relationship of the parties, the utter inadequacy of the consideration, the fictitious character of part of the consideration, the excess of liabilities of the company over its assets—are ample to sustain a finding that the assignment of the lease was made with intent to defraud creditors, and therefore subject to attack under the Missouri statute. Ward v. Stutzman (Mo. App.) 212 S. W. 65; Stern, etc., Co. v. Mason, 16 Mo. App. 473, 476; Robinson's Ex'rs v. Robards, 15 Mo. 459, 467; State ex rel. v. Hope, 102 Mo. 410, 14 S. W. 985; Klauber v. Schloss, 198 Mo. 502, 514, 95 S. W. 930, 115 Am. St. Rep. 486, and cases cited; Munford v. Sheldon, supra.

As to Bishop & Claiborne, their interest in the lease did not commence until June 20, 1924, when the assignment of rents under the subleases was made by Wilkinson to Farish for the benefit of the creditors of the former. At that time, Bishop had knowledge of the agreement by the company to settle with its creditors for 60 cents on the dollar; of the liquidation of its assets by a "going out of business" sale; of the bankruptcy proceedings against the company; and, in addition, Bishop had knowledge of the prior inability of the company to meet its debts as they matured; of the assignment under those circumstances of the lease to Drane Wilkinson; and of his negotiations for a sublease of part of the premises.

The knowledge of Bishop was the knowledge of his partnership. We think that knowledge of the foregoing facts prevented the partnership from acquiring any interest in the lease or in the rentals from the subleases. As against the creditors of the company, the partnership was in no sense a bona fide purchaser for value without notice. Commercial Nat. Bank v. Shriver (C. C. A.) 275 F. 12.

It is contended, however, that in assigning the lease to Drane Wilkinson, the

company was not conveying any of its property to the detriment of its creditors because the lease had no value. It is true that there was testimony of one or two witnesses to the effect that in their judgment the lease at the time of the assignment to Drane Wilkinson had no value. But this testimony goes for naught in face of the conceded facts that the premises were the best location in the city of St. Louis for the sale of men's furnishing goods; that a leading trust company was willing to advance about $6,000 in keeping paid up the rent on the lease and in making repairs until new tenants could be secured; and that new tenants were very shortly secured on terms that brought in an income several hundred dollars a month more than the rental under the old lease.

On the evidence, we reach the conclusion that the lease did have value at the time it was assigned to Drane Wilkinson.

■ Objection is urged that the prayer for judgment was not broad enough to authorize the personal judgment entered against Drane Wilkinson. We think there is no merit in this contention. The bill prayed, among other things, that the court would "require the Defendants herein to account for and pay over to Complainant all rents collected on account of the premises before described in excess of the rentals required to be paid under the original lease, * * * and for such other relief orders, judgments, or decrees in the premises as this Court may deem meet and proper." This was sufficiently broad to authorize the personal judgment entered.

■ Error is assigned to the admission in evidence of the books of account of the company on the ground that they were unauthenticated.

It appears from the record that the books were offered and received in evidence without objection, being identified as the books of the company. No witness took the stand, however, to identify the writing in the books or to vouch for the accuracy of the entries. Later, when it was sought by counsel for the trustee to read from the books, objection was made that the books were not sufficiently authenticated and were hearsay. The court held that the books had been already received in evidence, and that the objection came too late. We think the ruling was correct.

■ Finally, it is urged that error was committed in receiving in evidence the testimony of Drane Wilkinson theretofore given before the referee in the bankruptcy proceedings.

The testimony was properly received against Drane Wilkinson as admissions by him. Remington on Bankruptcy (3d Ed.) § 2005; In re Alphin & Lake Cotton Co. (D. C.) 131 F. 824.

■ It does not appear that the court considered these admissions as evidence against Bishop & Claiborne, and it will be presumed that they were not so used, and the evidence to support the decree as against Bishop & Claiborne was ample without such admissions.

We think the decree of the trial court was right, and it is accordingly affirmed.