## DURRETT v. HARRIS.

### Opinion delivered March 14, 1921.

1. FRAUDULENT CONVEYANCES—ELECTION TO TREAT LANDS AS BELONGING TO DEBTOR'S WIFE.—Where a creditor, having bought in his debtor's land on execution sale, knowingly permitted the debtor's wife to redeem the land in her name with her husband's funds, the creditor can not thereafter subject the proceeds of the land upon its subsequent sale by the wife.

2. BANKRUPTCY—POWERS OF TRUSTEE.—Under Bankruptcy Act, § 70, authorizing a trustee in bankruptcy to "avoid any transfer by a bankrupt of his property which any creditor might have avoided," where a creditor of a bankrupt was not entitled to avoid a transfer of property to the debtor's wife by reason of having elected to treat it as purchased with her funds, the trustee can not attack the conveyance for the creditor's benefit.

Appeal from Union Chancery Court; *J. M. Barker,* Chancellor; affirmed.

*W. E. Patterson,* for appellants.

1. It was not contended below, and we presume it will not be contended here, that the trustee in bankruptcy has not the right to pursue the claim of any creditor or is not "clothed with plenary power to sue to avoid any

transfer made by the bankrupt of her property which any creditor may have avoided, whether made within four months prior to the adjudication of bankruptcy or not." Brandenburg on Bankruptcy (3 ed.), p. 738, subdiv. (e), § 70; 75 Ark. 562; 103 *Id.* 105; 7 C. J., p. 247, § 387 (b) and notes.

2. Appellees pleaded in their answers as a defense to this action the discharge in bankruptcy of D. F. Harris, and he made his motion to dismiss on that ground. The motion was properly overruled. The discharge of a debtor in bankruptcy in no way precludes the trustee from recovering the property of the bankrupt which has been fraudulently transferred. 103 Fed. 64. The discharge is personal to the bankrupt, and does not release his fraudulent grantees from liability for the fraud committed by them. 103 U. S. 301; 168 Ala. 363; Ann. Cases 1912 B 249 and note.

The effect of a discharge is personal to the bankrupt. It does not release property owned by the debtor at the time he became bankrupt, although standing in the name of another, * * * and does not preclude the trustee from recovering the property from the bankrupt's estate which has been fraudulently transferred nor affect the right of creditors to have a fraudulent conveyance made by the debtor before his bankruptcy set aside. 7 C. J., p. 395-6, § 704 (1). The rights of the creditors against third parties liable jointly with the bankrupt or secondarily for him are not impaired by the bankrupt's adjudication nor his discharge. 2 Remington on Bankruptcy (2 ed.), § 1510; 118 Ark. 441.

3. The property here, 200 acres in land, the proceeds of which are involved here, was purchased and paid for wholly with funds procured and made wholly by the knowledge, skill, labor, time and efforts of the husband, D. F. Harris, and the placing it in his wife's name was a fraud upon creditors. 73 Ark. 179; 101 *Id.* 573; 106 *Id.* 237; 129 *Id.* 396; 121 *Id.* 383; 132 *Id.* 268; 134 *Id.* 241; 135 *Id.* 115; 86 *Id.* 225; 91 *Id.* 394; 108 *Id.* 164; 68 *Id.* 102;

55 *Id.* 116; 56 *Id.* 80; 50 *Id.* 46; 45 *Id.* 520; 218 S. W. 177; 12 R. C. L., p. 668.

Transactions between husband and wife affecting the rights of creditors, especially when the husband is insolvent, are closely scrutinized with care, and the burden is upon the wife to show good faith, or they will be set aside. 134 Ark. 241; 218 S. W. 177; 86 Ark. 225; 89 *Id.* 77; 75 *Id.* 562; 110 *Id.* 335.

4. The evidence shows fraud. All the facts and circumstances show taking the deed in the wife's name was a fraud on creditors. 110 Ark. 347; 113 *Id.* 100; 113 *Id.* 104-8.

It was a fraud to invest the earnings of the husband in the wife's name so as to defeat creditors. 20 Cyc. 355-8-9; 13 S. W. 78; 21 Cyc. 1429. Such earnings are subject to the husband's debts. 12 R. C. L. 509-524; 13 *Id.* 524, 1161.

Courts of equity will always subject the husband's earnings and property to his debts, where placed in the wife's name. 23 L. R. A. (N. S.) 1124; 21 Ky. L. R. 931. See, also, 14 Ky. L. R. 667; 48 S. W. 355; 91 Am. Dec. 98; 38 Am. St. Rep. 30; 16 S. E. 570; 39 W. Va. 567; 26 L. R. A. 537; 20 S. E. 599; 67 Ill. App. 274; 21 L. R. A. 623; 9 Ala. 933; 12 Gratt. 74; 16 Ohio St. 509; 91 Am. Dec. 98; 53 Iowa 470; 81 Iowa 302; 30 Am. Rep. 500; 55 Miss. 60; 90 Me. 376; 38 L. R. A. 190; 26 L. R. A. 537; Bump on Fraud. Convey., p. 250. These decisions are sustained by our own court. 66 Ark. 419; 67 *Id.* 110; 75 *Id.* 562; 89 *Id.* 77; 135 S. W. 78. The husband clearly furnished the means and paid for the lands, and, though in the wife's name, they are clearly subject to the debts of existing creditors, and the court erred in its decree.

*Neill C. Marsh, Callaway & Huie* and *Gaughan & Sifford,* for appellees.

1. Authority is found in the American decisions for any one of the three following propositions:

(1) If the wife of an insolvent debtor conducts a business depending upon the skill and labor of her hus-

band, and they, acting together, have the intent of accumulating property in her name for the purpose of defeating the husband's creditors in the collection of their debts, the property may be subjected to the payment of his debts.

(2)   While the insolvent debtor has the right to provide for the necessary wants of his family, whatever he earns over and above that amount goes to his creditors; so that, should his wife own a business or own property, he can only devote to her business or her property a reasonable amount of his time and skill, and whatever accumulation resulting from his labor and skill may come to her separate estate, over and above a reasonable contribution thereto, is subject to his debts and may be subjected by his creditors.

(3)   The creditor is entitled to all the property of his debtor except exemptions given by law, and only after the creditor has taken all the debtor's property and applied it to the payment of debts, is the debtor himself free.   He is under no legal obligation to work for the creditor, nor to accumulate anything for the creditor. 67 Miss. 710; 19 Am. St. Rep. 344; 55 Pa. St. 432; 99 Am. Dec. 769; 98 N. W. Rep. 486; 78 Am. Dec. 632.

Equity has no jurisdiction to compel men to work for their creditors when they prefer to work for their wives and children.   78 Am. Dec. 632; 12 Am. St. Rep. 641; 44 N. Y. 343; 21 U. S. (Law. Co. Ed.) 269; 28 Fed. 819; 89 Ark. 77; 75 *Id.* 562.

2.   The suit of the bank against D. F. Harris is a stale claim and inequitable.

McCULLOCH, C. J.   D. F. Harris, one of the appellees, was for many years prior to the year 1911 engaged in the sawmill business, and became heavily indebted to creditors; the Merchants' & Farmers' Bank of Junction City, Arkansas, one of the appellants in this action, being one of them.   He owed the bank three notes, one for $1,000, one for $1,973 and the other for $2,500.   Harris resided in Junction City and owned an undivided half

interest in a tract of land in that (Union) county, containing 424 acres; his brother, C. A. Harris, being the owner of the other half interest. The bank instituted an action at law in the circuit court of Union County against Harris to recover on the said note for the sum of $2,500, and sued out an order of general attachment, which was levied on the Union County land. Judgment was rendered in favor of the bank in that action, the attachment was sustained, and the land was ordered sold. At the sale, which was held on January 6, 1912, the bank became the purchaser of Harris' undivided half-interest in the land for the sum of $1,800, which was credited on the judgment, and received from the sheriff a certificate of purchase. A few days prior to the expiration of the period allowed for redemption from the sale, Mrs. C. D. Harris, the wife of D. F. Harris, paid to the bank the sum of $2,080, and the latter assigned to Mrs. Harris the certificate of purchase, upon which the sheriff executed to her a deed conveying the land attached and sold. Mrs. Harris and the other tenant in common subsequently divided the land and a part of the tract containing 200 acres was conveyed to her in severalty. She sold forty acres of the land to another person and then purchased forty acres more, which gave her the amount of acreage she received in the division. Mrs. Harris continued as the owner of the 200 acres, which was a farm partly in cultivation, until November, 1918, when she sold and conveyed it to S. E. Bass for the consideration of $5,000, of which $1,500 was paid by check on another bank in Junction City, the remaining sum of $3,500 being evidenced by note executed by Bass to Mrs. Harris.

The present action was immediately instituted by the Merchants' & Farmers' Bank in the chancery court of Union County against D. F. Harris and his wife to subject the proceeds of the sale to Bass (check and note) to the payment of the remainder of the debt still owing by D. F. Harris to the bank, the basis of the action being the charge that the funds used by Mrs. Harris in payment

to the bank of the consideration ($2,080) for the assignment of the certificate of purchase were really the funds of Harris himself, fraudulently accumulated and held in the name of his wife for the purpose of hindering the bank and other creditors in the collection of these debts. Shortly after the institution of this suit, D. F. Harris filed his petition in bankruptcy, and was duly adjudged a bankrupt, and appellant Durrett was elected trustee of the estate and intervened in this action, asking that the funds in controversy be decreed to be the property of the estate of the bankrupt. The chancery court, on the final hearing of the cause, dismissed the original complaint of the bank, as well as the complaint of the trustee as intervener for want of equity.

The testimony adduced in the case establishes the fact that the funds used by Mrs. Harris in paying the bank for the purchase of the land were accumulated in the business operations of D. F. Harris in the name of his wife, and that such operations were so conducted in the name of Mrs. Harris for the express purpose of putting the proceeds beyond the reach of Harris' creditors. When Harris became insolvent in the year 1911, he divested himself of all of his property, except this undivided half-interest in the Union County land which he held with his brother. He had no other property left, nor did his wife own any property. She was not a business woman, and gave her entire time and attention to housekeeping. Harris himself seems to be a capable business man, and he found an opportunity to secure contracts with the Federal government to furnish timber for use in constructing locks and dams in the Ouachita River at Camden and in the Sunflower River in the State of Mississippi. He availed himself of this opportunity, and, in order to prevent interference from creditors, he took the contracts in the name of his wife and operated the business in her name. No capital was required, and the skill and efforts of Harris were substantially all that were involved in the enterprise. Harris managed the

business openly and entirely, using his wife's name in the contracts and in his dealings with the proceeds arising from those business operations. Mrs. Harris had nothing to do with the business except to permit the use of her name. This state of affairs seems to have been well known and a matter of notoriety in the community where the business was carried on, and where the Harrises resided, where the bank operated its business and its officers resided. The business was profitable, and from the accumulated profits the sum of $2,080 was used to purchase from the bank for Mrs. Harris the tract of land which the bank had acquired at the attachment sale. Learned counsel for appellants say that, since the holding of the funds in the name of Mrs. Harris was colorable and in fraud of the rights of creditors, the purchase of the certificate amounted to no more than a redemption of the land from the sale. Conceding that to be true as to other creditors of Harris, it ought not to be so treated as to the bank which received the funds as a payment by Mrs. Harris for the purchase of the land. The bank made its election to accept the funds in purchase of the land. It accepted the funds, not as the property of Harris, the debtor, but as the property of Mrs. Harris. The bank knew or could have known then as well as now the source of those funds and how they were accumulated. In order to escape the effect of its election at that time to treat the funds as being those of Mrs. Harris and to accept the same from her in purchase of the land, it devolves on the bank to show that it accepted the funds in ignorance of their source. It is inconceivable that the bank did not know or have abundant opportunity to ascertain at that time the true state of affairs in regard to those funds. Mrs. Harris had no property, and was apparently not engaged in any business whereby there could be accumulated earnings. Her husband attended to the business, and he also made the purchase of this land from the bank for his wife.

We think that the bank is bound by its election and can not now be heard to say that the funds used in the purchase of the land should, in equity, be treated as the property of Harris and followed through the land to the proceeds of the sale to Bass, so as to subject those proceeds to payment of the debt of Harris to the bank. Under such circumstances, a court of equity will not lend its aid to uncover an alleged fraud. Whatever the rights of other creditors of Harris might have been, the bank is not in an attitude to set up the fraud for the purpose of subjecting the proceeds of the sale of the land to the payment of their debt.

The trustee is in no better attitude as the representative of the bank, a creditor of the bankrupt. A trustee in bankruptcy may, under section 70 of the National Bankruptcy Statute, "avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided,'' and this is the extent of his rights and authority. *Boyd* v. *Arnold,* 103 Ark. 105.

Since appellant bank is not in the attitude to avoid the transfer by Harris, the trustee can not do so for it. There is no proof in this record to show that there are other creditors who are entitled to avoid the conveyance.

Decree affirmed.