### In re McKINNEY.

### COWAN v. CULL.

(Circuit Court of Appeals, Ninth Circuit. May 28, 1923.)

No. 3933.

1. **Bankruptcy ☞288(1) —Claim for money due bankrupt held determinable only on plenary proceedings.**

Summary proceeding before the referee was not the proper mode of procedure for trustee in bankrupty to assert claims against a creditor of the bankrupt for an item claimed by the creditor to have been settled in accounting between him and the bankrupt, or for an item which trustee claimed should have been credited to the bankrupt for the use of his property, but such claims could only be determined in a plenary proceeding.

2. **Bankruptcy ☞293(4)—Jurisdictional objection held not waived by defendant in summary proceedings.**

In summary proceedings by trustee in bankruptcy to recover a disputed claim against a third party, the latter did not waive the objection to the jurisdiction that plenary proceedings were the proper remedy, where he appeared specially, and his answer was not to the merits, but merely briefly recited the dealings between the parties, for the purpose of showing his claim was adverse.

Appeal from the District Court of the United States for the District of Arizona; William H. Sawtelle, Judge.

In the matter of Earl N. McKinney, bankrupt. On petition by William Cowan to review order of referee, opposed by John P. Cull, trustee in bankruptcy. Judgment was rendered against petitioner, and he appeals. Reversed.

David Benshimol, of Douglas, Ariz., and Oscar T. Barber, of San Francisco, Cal., for appellant.

C. V. Manatt, of Douglas, Ariz., for appellee.

John F. Seymour, of El Centro, Cal., for bankrupt.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. On February 16, 1920, the petitioner was ordered to appear before the referee and show cause why he

should not pay over to the estate of the bankrupt the sum of $5,038.-41. The petitioner appeared and objected to the jurisdiction of the referee to proceed in a summary manner, for the reason that the petitioner claimed to own the money referred to in the order adversely to the trustee and to the estate of the bankrupt. In his said appearance and objection the petitioner expressly stated that he did not consent that the matter be heard before the referee. The facts out of which the claim of the trustee arose are, in brief, the following:

The petitioner had loaned the bankrupt upon mortgages various sums of money, and in 1917 by agreement the petitioner took over all the mortgaged property and managed the same, with a view to working out the bankrupt's indebtedness. But on January 2, 1918, the petitioner brought suit to foreclose the mortgages, whereupon a stipulation was entered into between him and the bankrupt, whereby the latter agreed to confess judgment for $16,260, and interest and attorney's fees, amounting in all to $20,411.68, which amount was to bear interest at 10 per cent. per annum from January 3, 1918. It was not until December 16, 1918, that judgment was entered in accordance with the stipulation. The petition for adjudication of bankruptcy was filed April 9, 1918. The trustee in bankruptcy thereafter obtained a temporary injunction staying the sale, but, the injunction being dissolved, the sale was made on November 25, 1919, and the petitioner bid in the property for $24,349.34.

Judgment was rendered in the bankruptcy court upon the trustee's summary proceeding against the petitioner for $4,705.55. That sum was composed of two items: First, the sum of $1,265.54, a balance of moneys alleged to have been received by the petitioner from the sale of cattle belonging to the bankrupt during the time of the petitioner's possession of the same and before the foreclosure suit, which sum the referee found should have been credited upon the notes owing from the bankrupt to the petitioner. Second, the sum of $3,439.97, which was claimed to be due from the petitioner to the bankrupt's estate for the reason that the interest charged by the petitioner upon the indebtedness from the bankrupt from January 3, 1918, until the date of the sale of the property should be credited with interest at the rate of 10 per cent. upon the value of the personal property at the time when it was turned over to Cowan on December 12, 1918. The referee assumed that value to be $15,736.33, and computed interest on it at 10 per cent. per annum, whereby he arrived at the sum of $3,439.97, which he ruled should be credited to the bankrupt's account.

As to the first of these items, the petitioner's claim to the right to retain the sum so sought to be obtained from him was shown to have been settled in an accounting had between the petitioner and the bankrupt on January 7, 1918, when they agreed on the amount for which judgment should be rendered in the foreclosure suits. The second item consisted of a demand upon the petitioner for a sum which the referee estimated as proper to have been credited by the petitioner for the use and occupation of the bankrupt's property; the referee having reached the conclusion that "the use and benefit of the proper-

ty should have more than paid the interest." It is obvious that the said claim is not for property which at any time belonged to the bankrupt's estate, but is for money which, in the opinion of the referee, ought to have been credited to the bankrupt for the use of his property. In other words, it was an unliquidated demand.

[1] The controversy involved in the summary proceeding had no relation to property in the possession or control of the bankruptcy court, or of the bankrupt, or any one representing him at the time when the petition for an adjudication of bankruptcy was filed or thereafter. It related to transactions between the bankrupt and the petitioner which were asserted by the latter to have been settled upon mutual accounting. The petitioner's claim of right to retain the moneys so demanded by the trustee was not colorable or fraudulent, and it was clearly adverse. It was therefore determinable only upon plenary proceedings in the usual and due process of law. Weidchorn v. Levy, 253 U. S. 268, 40 Sup. Ct. 534, 64 L. Ed. 898; Galbraith v. Vallely, 256 U. S. 46, 41 Sup. Ct. 415, 65 L. Ed. 823; Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413; In re Wood (C. C. A.) 278 Fed. 355; Courtney v. Shea, 225 Fed. 358, 140 C. C. A. 382.

[2] The trustee's contention that the jurisdictional objection was waived by the petitioner is not sustained by the record. The petitioner made a special appearance in answer to the order to show cause, for the purpose of objecting to the jurisdiction and for no other purpose. The trustee asserts that the objection to the jurisdiction was coupled with an answer to the merits and that thereby objection to the jurisdiction was waived. But all that is set forth in the special appearance and objections, in the way of allegations of fact, is a brief recital of some of the dealings between the parties for the purpose of showing that the petitioner's claim was adverse. There was obviously no intention to answer on the merits, or to present a pleading in the nature of an answer upon which the matters in controversy might be determined. The petitioner at all times insisted upon his objection to the jurisdiction. The case, therefore, does not come within the rule of the decision of this court in In re Eilers Music House, 274 Fed. 330, or the decision in Re Brantman, 244 Fed. 101, 156 C. C. A. 529. It is governed by the principles announced in In re Franklin Brewing Co. (D. C.) 257 Fed. 135, In re Kornit Mfg. Co. (D. C.) 192 Fed. 392, and In re Gottlieb & Co. (D. C.) 245 Fed. 139.

The judgment is reversed.