MURRAY FREDERICKS, trustee in bankruptcy for Andrew
Jacoby, a bankrupt, complainant-respondent,

*v.*

ANDREW JACOBY, RACHEL JACOBY, REUBEN JACOBY, IRVING
GOLDMANN, HETTIE GOLDMANN, RUANDRAY REALTY
COMPANY, a corporation, HOUSE OF JACOBY, a corpora-
tion, and ISAAC LEVY, defendants-appellants.

[Argued May 29th, 1940.   Decided December 12th, 1940.]

*Mr. William Elmer Brown, Jr.,* for the respondent.

*Mr. Clarence Blitz* and *Messrs. Bourgeois & Coulomb (Mr.
George A. Bourgeois,* of counsel), for the appellants.

*Messrs. Cole & Cole,* for the appellants The Federal Reserve
Bank of Philadelphia and Maurice Y. Cole, trustee.

*Messrs. Babcock & Champion,* for the appellant The Pru-
dential Insurance Company of America.

The opinion of the court was delivered by

RAFFERTY, J.
The trustee of Andrew Jacoby, a bankrupt, in the bill of
complaint filed below prayed that certain transfers of property
made by Andrew Jacoby in 1930 be declared fraudulent as

to then existing and subsequent creditors of Andrew Jacoby, and asked other incidental relief.

The decree entered in the suit declared as being fraudulent a deed of conveyance of certain real estate situate in Atlantic City, made and given on January 16th, 1930, by Andrew Jacoby to Ruandray Realty Company, a corporation, hereinafter referred to as Ruandray, and a subsequent conveyance dated January 30th, 1933, from Ruandray to Irving Goldmann, a son-in-law of Jacoby, of the identical property. The decree also declared as being fraudulent a bill of sale to a certain tobacco business conducted under the name of "House of Jacoby," executed by Andrew Jacoby and Rachel, his wife, under date of January 18th, 1930, to House of Jacoby, a corporation. Certain judgments and promissory notes assigned to Isaac Levy, were ordered surrendered up and canceled and a trust agreement, under which the trustee held a mortgage made by Jacoby to a bank, was ordered canceled in so far as the trust agreement provided that the mortgage was held in trust as security for the payment of certain notes assigned to Levy. Incidental relief by way of accounting was also ordered. The appeal challenges the decree thus entered and charges error, further, in the failure of the trial court to provide for reimbursement to Goldmann for expenditures alleged to have been made by him in behalf of Jacoby. It is urged too that the action of complainant below was barred by laches and by the statute of limitations.

The learned Vice-Chancellor, in an opinion which has been filed, carefully considered the entire matter and advised the decree now before us. This opinion is not reported. We have carefully reviewed all of the testimony and have considered the points and arguments made on behalf of appellants and find that the decree entered below must be affirmed. We refer herein only to those facts which are necessary to this finding.

On May 1st, 1911, City Square Land Company conveyed certain real estate situate in Atlantic City to Andrew Jacoby. Thereafter, on these premises, Jacoby developed an extensive tobacco business, conducting the same under the name of "House of Jacoby." In August, 1927, Mississippi Valley

Merchants State Trust Company, hereinafter referred to as the Trust Company, loaned $200,000 to a club in Atlantic City, taking a bond and mortgage on property of the borrower to secure the loan. In addition thereto and as further security for the loan, it obtained a collateral guarantee for the payment of the bond and mortgage from Andrew Jacoby and others. In August, 1929, the Trust Company instituted suit on this guarantee and judgment therein was entered May 2d, 1930. Subsequently the Trust Company foreclosed the mortgage and credited the judgment to the extent of the proceeds of the foreclosure sale, thereby reducing the amount of the judgment to approximately $157,000. The Trust Company assigned its judgment in January, 1931, and thereafter, the judgment was again assigned.

During the pendency of the suit of the Trust Company against the guarantors, Andrew Jacoby was considerably indebted to certain banks in Atlantic City. A first mortgage in the sum of $30,000 on the real estate involved in this suit had been made in July, 1924, by Jacoby. On December 4th, 1929, Jacoby executed a further mortgage against this property in the sum of $40,000. This second mortgage was held by a bank in Atlantic City as collateral security for the indebtedness of Jacoby to that bank. In addition to this, Jacoby was indebted on accounts payable arising out of the tobacco business in a sum exceeding $60,000.

In a statement for the year 1923 Jacoby listed the property as being worth $100,000, stating that it was assessed for $84,500, and that he had refused $150,000 for the sale thereof. Another statement dated December 31st, 1926, made by Jacoby, listed the value of the property at $150,000. The court below found the true value of the property to be $100,000.

It appears from the evidence that his bank creditors were pressing Jacoby for payment during this period.

On October 10th, 1929, Jacoby and wife leased the premises at a rental of $11,000 per year, plus a percentage of the tenant's gross sales receipts and plus tax increases during the term of the lease, and removed the tobacco business to another location.

On January 11th, 1930, two corporations were organized, namely, Ruandray Realty Company, hereinafter referred to as Ruandray, and House of Jacoby. The stockholders of these corporations were Andrew Jacoby, Rachel Jacoby and Reuben Jacoby. Both certificates of incorporation were executed before the same witnesses and were recorded at the same time. On January 16th, 1930, Jacoby conveyed the real estate in question to Ruandray, and although the deed expresses a consideration of "One Thousand Dollars ($1,000.00) and other good and valuable considerations," Jacoby testified that the only item of value that came to him for the transfer was the 140 shares of stock of the corporation, originally subscribed to. With respect to the consideration for the conveyance, Jacoby testified "that was all in the family, whatever it was," thereby giving rise to the suggestion that although the deed made in 1911 went only to Andrew Jacoby, notwithstanding, it was a family enterprise and the distribution of stock of the corporation was for the purpose of fixing the proportionate interest of the members of the family. Rachel Jacoby, wife of Andrew, and one of the incorporators of Ruandray, did not join in the deed into Ruandray, but on March 31st, 1938, she delivered to Goldmann a deed of quitclaim of dower right in the premises. This must be construed as a practical admission that Rachel had no interest in the property other than her dower right. The statements made by Jacoby to the banks, as above referred to, indicate that Jacoby held himself out, prior to his difficulties, as the sole owner of the property. On a familiar principal Rachel Jacoby cannot, as against creditors of Andrew Jacoby, claim an interest in this property. *Besson* v. *Eveland, 26 N. J. Eq. 468.* So also as to Reuben Jacoby.

On January 16th, 1930, Andrew Jacoby assigned to Ruandray for a nominal consideration the lease to the premises above referred to.

On January 18th, 1930, Andrew Jacoby and Rachel Jacoby, as owners in common, conveyed to the corporation "House of Jacoby" all of the assets of the tobacco business theretofore conducted under what appears to have been a trade name of "House of Jacoby," in consideration of the issuing of certain

stock of the corporate "House of Jacoby" to them individually; and therein it is stated that the net worth of the business was in excess of $71,000. It is pertinent to observe here that the credible evidence throughout the case shows that the tobacco business was owned by Andrew Jacoby alone. The bank statement for the business year 1923, for instance, is made on stationery entitled "The House of Jacoby, founded and owned by Andrew Jacoby, 1324 Atlantic Avenue, Atlantic City, N. J."

The inference is irresistible and it is our conclusion that Andrew Jacoby was in, fact the sole owner of the real estate and the tobacco business and finding himself in serious financial embarrassment, with the aid of a son, now deceased, who was a lawyer, conceived the not uncommon device of causing the corporations to be organized and transferring to these corporations this property with the express design and purpose of putting out of the reach of his creditors, especially the Trust Company, assets out of which these creditors might be made whole. The fraudulent purpose is palpable especially in view of the fact that Andrew Jacoby did not himself receive all of the stock issued by these corporations as consideration for the conveyances but distributed it to members of his family. This fact, in itself, makes the transaction on its face fraudulent. The stock thus acquired by Rachel Jacoby and Reuben Jacoby, to the value thereof, was an attempted diminution of assets of Andrew Jacoby designed to frustrate the rights of his creditors. No pretense is made that Andrew Jacoby was possessed of or had retained sufficient other assets to discharge all of his obligations.

In January, 1933, Ruandray conveyed the real estate to Goldmann, who testified that the purchase price was $60,000, made up by the payment of $2,500 cash, the cancellation of a note made by Andrew Jacoby to Moses Goldmann, father of this appellant, originally in the amount of $10,000, but upon which there was then due the sum of $7,500, and that he "assumed" the payment of the $50,000 mortgage. Andrew Jacoby testified that the particular note was given to Moses Goldmann "during the World War." The note was not preserved and, hence, could not be exhibited at the trial. The

deed itself recites that Goldmann took "subject" to existing mortgages, &c. He did not "assume" the payment thereof. Goldmann worked in connection with the tobacco business of the House of Jacoby for about twenty-two years. The attorney representing him at this transaction of sale was his brother-in-law, now deceased, the son of Andrew Jacoby, before mentioned. Goldmann testified that at the time of the closing of the transaction in the office of his brother-in-law, he was unaware of the existence of the $40,000 mortgage before mentioned and of the judgment of the Trust Company, and that he knew nothing at all about the affairs of Ruandray. It requires no perspicacity to stamp this recital as being unworthy of belief. In June, 1934, Goldmann executed a power of attorney to Andrew Jacoby, thereby giving to Jacoby full power and authority respecting the bank account of Goldmann at a named bank. Actually Jacoby operated the business as he always had. We need not further pursue the activities of Goldmann. We are not impressed with his claim for reimbursement of funds alleged to have been expended in connection with a subsequent mortgage transaction. This claim is based upon the assumption the original transaction was free from fraud, but we have found otherwise. So also as to the effect of the decree upon the securities assigned to Isaac Levy. It is conceded these were held in trust for Goldmann.

Certain of Andrew Jacoby's debts having been subsequently paid or assumed by the corporations, it is suggested that the transaction amounted to no more than a preference of creditors. We do not so regard it for the reasons before stated.

The contention that respondent is barred by laches and the statute of limitations is without merit.

The decree appealed from is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PORTER, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, HAGUE, JJ. 12.

*For reversal*—None.