## McBRIDE v. FARRINGTON.
### Civ. No. 2202.

District Court, D. Oregon.
March 30, 1945.

Teiser & Keller, of Portland, Ore., for plaintiff.

Reilly & Davidson and Stephen E. Parker, all of Portland, Ore., for defendant.

JAMES ALGER FEE, District Judge.

This is an action by the trustee in bankruptcy of the Western Bond and Mortgage Company, a petition for the bankruptcy of which was filed November 24, 1931, in involuntary proceedings. The Western Bond and Mortgage Company was adjudicated on this petition September 24, 1934.

Certain transactions which occurred between the bankrupt and defendant Farring-

ton who was an officer thereof are said to have transferred assets of that corporation to him without any consideration. These transactions are said by plaintiff to have occurred on the 20th day of December, 1930, as to the first "cause of action", and on the 12th day of December, 1929, as to the second "cause of action." They are alleged in the complaint to have been discovered on the 21st day of September, 1943.

McBride was appointed trustee of the Western Bond & Mortgage Company, bankrupt, on December 12, 1934. This action was commenced October 2, 1943. McBride is an attorney and has been chief of the estate tax department and of the income tax department of the United States Bureau of Internal Revenue. While so connected, he had some familiarity with the income tax liability of bankrupt and Farrington. He personally heard some of the testimony at the trial of Farrington's case before the Board of Tax Appeals and was present at the taking of depositions of Brown and Besson in the bankruptcy court in 1931, which transactions related to manipulations of the stock and property of the bankrupt.

Soon after his appointment as trustee, McBride was visited by Ralph Moody who was conducting an investigation of the affairs of bankrupt on behalf of the State Attorney General's office. From this source, McBride was paid a monthly sum for carrying on an investigation and furnished the services of two auditors. Latourette, attorney for McBride during this period, testified that strenuous efforts were made to investigate everyone who had been involved in the transactions resulting in bankruptcy, including Farrington. The newspapers carried accounts of the alleged civil and criminal liability of Farrington, some of which McBride had called to his attention, and there were many suits filed in court which contained positive allegations in relation thereto.

In 1935, McBride knew of a tax claim asserted by the Internal Revenue Department. He had known of the fact that there was an amended income tax return upon which, when he finally obtained a copy in 1943, he found bodied forth completely the foundation of this case. After he knew an income tax report existed, McBride called at the office of the agent of Internal Revenue but found no copy there. Some time after this, he heard that Robert Jacob, an attorney, had a copy of this document. For three or four years after he had this knowledge, he made no effort to see the report. Finally, he called at Jacob's office. He found that Jacob was out of the office and immediately abandoned all further effort. Thus he procrastinated for all these years in obtaining the copy although from his experience in tax matters, he must have known that this document would have been invaluable in unwinding the tangled skein which he had in his hands. The whole theory of excusing the trustee for failure to bring this suit earlier is that the finding of this report and the amended return was the discovery of fraud.

In 1936, McBride employed Erickson, the present accountant, and about that time, present counsel were employed. Data was at hand pointing clearly to a loss of assets in another transaction. This was pursued with energy and ability by counsel for McBride both in this court. In re Western Bond & Mortgage Co., 44 F.Supp. 89, and in the Circuit Court of Appeals, Bank of California, National Association v. McBride, 9 Cir., 132 F.2d 769, with the result that there was a substantial recovery. The final opinion upon appeal was announced January 14, 1943. Thereafter, the energy theretofore concentrated on that case was transferred to this investigation with the result that the obvious means of obtaining the amended return were exercised and the alleged fraud was discovered.

The State Statute of Limitations in Oregon, on a fraud action, as this is, commences running from the date of the act and creates a bar within two years, but provides that this period shall run only from discovery, either at law or in equity.[1]

---

[1] Chapter 2, Title I, of the Oregon Statutes provides: "§ 1-201. Time of commencing actions: Objection, how taken. Actions at law shall only be commenced within the periods prescribed in this title, after the cause of action shall have accrued; * * *."

"§ 1-202. * * * The periods prescribed in the preceding section for the commencement of actions, shall be as follows:— * * * ."

"§ 1-206. Within two years. Within two years,— (1) * * * for any injury to the person or rights of another, not arising on contract, and not herein especially enumerated; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to

■ In this case, the trustee is not suing to recover the property of the bankrupt in specie.[2] Nor is it believed that this action is for injury or detention of the property of the bankrupt.[3] If a cause of action were given to the trustee by the Bankruptcy Act, the right would be generated by the terms of the enactment and would then fall within the two-year limitation. The reasoning of Herget v. Central National Bank & Trust Co., 65 S.Ct. 505, would furnish an analogy. But if the cause of action is not given by the Act, as the better argument suggests, it must have been an inherited right. The cause of action is for fraudulently depriving the corporate bankrupt of certain property. Such a right can have a genesis in three ways in order for the trustee to inherit. First, a creditor of bankrupt might have rights against the person fraudulently obtaining such property.[4] Second, the bankrupt corporation itself might have a right against a person who fraudulently misappropriated its property. Finally, a stockholder might have a right of action for misappropriation, or breach of trust, by one of the officers of the corporation.[5] The court is of opinion that the present action is one derived from one of the above-mentioned sources. It does not take its initial genesis by virtue of the provisions of the Bankruptcy Act.[6]

■ Before the passage of the Act of 1938, it had been consistently held in the Ninth Circuit that to such an inherited cause of action the general statute of limitations prescribed by the particular state applied.[7] This was the more logical since it is a principle agreed upon with unanimity that where a right of action given by a particular state was conditioned in the same statute by a limitation, the expiration of the period thus set would bar the remedy, notwithstanding the language of the old clause 11, sub. d.[8] Universally the courts maintained that where the general law of the state had provided the right in a creditor, that if the law of the general limitation set up by the state had barred the remedy in the creditors, the trustee could not revive it.[9] This was founded upon the proposition that the trustee was enforcing a right based upon rights inherited from the bankrupt, or the creditors, and for which remedies were given by state law.[10] It has been intimated that the former provisions of the Bankruptcy Act had no effect upon this situation since former section 11, sub. d, was a withdrawal of juridical and representative capacity.[11] Therefore, that

---

commence only from the discovery of the fraud or deceit."

"§ 9-103. A suit shall only be commenced within the time limited to commence an action as provided in chapter 2, of title 1 of this Code * * *. In a suit upon a new promise, fraud, or mistake, the limitation shall only be deemed to commence from the making of the new promise or the discovery of the fraud or mistake * * *."

[2] Sections 70, sub. a and 70, sub. e are not antagonistic as contended by plaintiff. By Subsection a the trustee acquired all the rights which the bankrupt had in property which he had transferred in defraud of creditors. By the former section 47, sub. a(2), 11 U.S. C.A. § 75, sub. a(2), the trustee was given the rights of creditors as to all the property with which he became vested by virtue of the clauses of section 70. Under the act of 1938, all these provisions now become a part of section 70 and the causes of confusion no longer exist. See 11 U.S.C.A. § 110.

[3] "rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property." Bankruptcy Act, § 70, sub. a(6). A two-year statute of limitations un-

der the Oregon state law would apply were the cause of action one for taking or detention of property.

[4] Kane v. Sesac, D.C., 54 F.Supp. 853.

[5] See In re Globe Drug Co., 9 Cir., 104 F.2d 114.

[6] Cf. Section 60, Bankruptcy Act, 11 U.S.C.A. § 96; Herget v. Central National Bank & Trust Co., supra.

[7] Davis v. Willey, D.C., 263 F. 588; Davis v. Willey, 9 Cir., 273 F. 397.

[8] Bankruptcy Act of 1898, § 11, sub. d, 11 U.S.C.A. § 29, sub. d.

[9] See Heffron v. Duggins, 9 Cir., 115 F.2d 519; Durrett v. Harris, 148 Ark. 4, 228 S.W. 386; Harrigan v. Bergdol, 270 U.S. 560, 46 S.Ct. 413, 70 L.Ed. 733.

[10] See Davis v. Willey, supra; Woodman v. Butterfield, 116 Me. 241, 101 A. 25; Cobb v. First National Bank, D.C., 263 F. 1000; First Presbyterian Church of Santa Barbara, Cal., v. Rabbitt, 9 Cir., 118 F.2d 732.

[11] See Nairn v. McCarthy, 7 Cir., 120 F.2d 910, 912, where it is said: "It does not follow from the fact that the trustee is prohibited from bringing an action subsequent to that time that he is authorized to maintain an action prior thereto, irrespective of an applicable limitation statute."

section was not intended as a statute of limitations, but simply a termination of power. There were, it is true, cases holding that old section, 11 sub. d, was a true statute of limitations and if the remedy of a creditor were alive on the date of filing the petition, it lingered on available to the trustee until two years after final closing.[12] But practical considerations as well as authority constrain this court to the opposite view. Repose is the aim of these local statutes and the state policy should control. While then a case can be made for the retention of the remedy until a trustee could orient himself before bringing action, it should not be extended as in this case to thirteen years unless the affirmative policy of the state permit.

■ The state statute as above noted erected the bar of limitations against the remedies here sought sometime in 1933, unless the fraud was not discovered until later. But the trustee here had knowledge of facts sufficient to lead him to make the allegations presented here, soon after he assumed responsibility[13] for the management of the estate. Farrington bulked large in the rumors of fraudulent dealings with bankrupt in the whole period after the filing of the petition and covering the time of the initial incumbency of the trustee. The associates of the trustee indicate knowledge of it. The press accounts, at least one of which was specifically brought to the attention of the trustee himself, are full of such suspicions. There was litigation of record which pointed to these very transactions. All the records of the bankrupt were placed in the trustee's hands and he had some assistance and sufficient money to make an investigation of them. The mere fact that the trustee did not have the specific document, an amended income tax report for the year 1930, now considered to furnish conclusive proof, is immaterial. There was data on hand from which he should have taken warning of the essentials. The information was within the knowledge of the trustee before 1936, by construction. Such knowledge must be attributed to the trustee and his attorneys in that year which saw the first vigorous attempts to follow the claim against the Bank of California. But

two years had expired after these events before the Chandler Act took effect. Their action was barred then, by the Oregon statute, before the new act became effective.

Logically the opinion should stop here, but the arguments have wandered far afield. In order to save question, the court now considers the situations which would have arisen if knowledge had been obtained by the trustee at a later date.

■ If it be assumed that knowledge had not been obtained by the trustee by the date of the taking effect of the amendment to the bankruptcy law, in 1938, the two years after adjudication had already passed so that the particular clause of the statute gives no aid. But the state statute might give two years more vicariously. The court holds that the knowledge of facts which the trustee had during these two years was sufficient to guide him to an actual knowledge of the matters now alleged. Therefore, two years from the effective date of the Chandler Act barred the right of action completely. The question as to construction, if this action had been filed within two years from the effective date of the amendatory act, might have been puzzling, but that cannot arise now.

■ The Act of 1938 changed the whole situation with regard to limitations under the bankruptcy act. The conflict between the court regarding the interpretation of old section 11, sub. d, was "primarily responsible for the framing of the new Section 11, sub. e, in 1938, [11 U.S.C.A. § 29, sub. e]."[14] The new section 11, sub. e, was obviously a compromise and extended the limitations laid down by the state statutes under the interpretation of Davis v. Willey, supra, to a fixed period of two years beyond the date of adjudication. It will be noted, however, that if the state statute had barred the action before the filing of the petition in bankruptcy, or if the state statute provided for a term of limitation which did not lapse until two years after adjudication, then no change was effected where the doctrines previously announced by the Ninth Circuit Court of Appeals continue in effect.[15] The purpose

---

[12] Isaacs v. Neece, 5 Cir., 75 F.2d 566; Engebretson v. West, 133 Neb. 846, 277 N.W. 433; Callaghan v. Bailey, 293 N.Y. 396, 57 N.E.2d 729.

[13] Linebaugh v. Portland Mortgage Co., 116 Or. 1, 13, 14, 239 P. 196. Cf. Sedlak v. Sedlak, 14 Or. 540, 13 P. 452.

[14] Herget v. Central National Bank & Trust Co., supra [65 S.Ct. 507].

[15] In Hastings v. H. M. Byllesby & Co.,

of the new act seems unquestionably to be to extend to the trustee a fixed period within which he might file all suits which he has inherited from the debtor unless it were the policy of the particular state to give him even a longer time.[16] Section 6 of the Bankruptcy Act of 1938, 11 U.S.C.A. § 1, note, provides in part: "Except as otherwise provided in this amendatory Act, the provisions of this amendatory Act shall govern proceedings so far as practicable in cases pending when it takes effect; but proceedings in cases then pending to which the provisions of this amendatory Act are not applicable shall be disposed of conformably to the provisions of said Act approved July 1, 1898, and the Acts amendatory thereof and supplementary thereto."

Inasmuch as the limitation clause is an extension rather than a diminution of the time allowed to the trustee for filing a cause which he has inherited from the bankrupt, it is practicable to apply new section 11, sub. e, in this case. According to the determinations which the court has heretofore made upon the facts, the state statute already had run before the Chandler Act was enacted. Thus we are brought back to the same situation. It was practicable to apply the Chandler Act and to give effect to the state statute of limitations by the court as already found. Based on the facts, the remedy is barred.

■■■ Entirely irrespective of the limitations, state or federal, in a court of bankruptcy which is controlled by equitable principles, it would seem that the doctrine of laches was applicable.[17] It has, in fact, been applied in state courts under similar circumstances.[18] Even if we assume all of the allegations of plaintiff's complaint to be true, it still must be remembered that these actions were consummated in 1929 and 1930, approximately fifteen years ago; that the filing of the petition in bankruptcy

was in 1931; that extensive investigations were made at that time; and that the main actors in the transactions with the exception of defendant, are dead, as well as others who have known material facts.[19] This court has allowed recovery upon another one of the major claims and this determination was affirmed by the Circuit Court of Appeals and the property has now been recovered. The right of recovery in that case was not nearly so clear at the outset as it appears now when opinions are on record, but after all, it represented even at that time, by far the best chance of upsetting a fraudulent transaction and obtaining money for this estate. The trustee and the present attorneys have devoted years of unflagging zeal to obtaining recoveries in that case, but it is the opinion of the court that they deliberately spent their work and efforts upon that proposition as the main chance and that they did not as vigorously pursue the clues that might have lead to a like recovery in the instant cause. There were sufficient facts of record long ago to have accomplished this purpose. All they had to do was to obtain the income tax return which they now have, and it was available to them at all times. Laches is not established by the lapse of time alone, but here there is detriment to the defendant in that he has been robbed of a means of defense by the death of witnesses and participants, and on the other hand it is apparent to the court that there was a more or less deliberate choice in pursuing the other claim rather than this one. Whether these circumstances be used to create a bar by reason of laches, or to make plain that it is "practicable" to apply the provisions of the limitations in the Act of 1938, the result is impregnably established thereby. A bar to prosecution of these claims is now complete.

Findings and judgment of dismissal may be prepared.

---

293 N.Y. 413, 57 N.E.2d 737, the court cites and follows Callaghan v. Bailey, supra, and thus comes to the conclusion that a diminution rather than an extension of the period of limitation was effected by new Section 11, sub. e of the bankruptcy act. From this premise the court arrives at the conclusion that it is not practicable to apply the new section of the Chandler Act. Although the reasoning of this distinguished court is persuasive, it is not binding here. The opinion simply means that in the state courts of New York a longer period of limitation will be applied. A court bound

by Davis v. Willey, supra, must necessarily reach a contrary conclusion.

[16] Cf. Herget v. Central National Bank & Trust Co., supra.

[17] See Wilkinson v. Livingston, 8 Cir., 45 F.2d 465.

[18] Wolpert v. Gripton, 213 Cal. 474, 2 P.2d 767; Cf. Bovay v. H. M. Byllesby & Co., Del.Ch.1940, 22 A.2d 138; also Fredericks v. Jacoby, 128 N.J.Eq. 426, 16 A.2d 809.

[19] Wilkinson v. Livingston, supra; Cf. Bingaman v. Commonwealth Trust Co., D.C., 15 F.2d 119.