**In re PLATT.**

No. B-28024.

District Court, D. Oregon.

Feb. 3, 1947.

Platt, Henderson, Warner, Cram & Dikinson, of Portland, Or., for bankrupt.

Ralph A. Coan, of Portland, Or., for trustee.

Thomas R. Winter, Sp. Ass't, Bureau of Internal Revenue, of Seattle, Wash., and Doris Oldenstadt, Chief of Legal Division, Office of Collector of Internal Revenue, of Portland, Or., for respondent.

JAMES ALGER FEE, District Judge.

This is a proceeding to review the action of the referee sustaining objection of the trustee to the claim of the United States to receive the amount unpaid at date of bankruptcy, on the income tax liability shown by the tax return filed by bankrupt before the filing of his voluntary petition.

The facts are conceded. On March 15, 1943, Platt filed an individual income tax return showing liability for $4,244.33 which he elected to pay in four equal installments. He paid one installment with the return and another upon June 15, 1943. On July 2, 1943, he filed a voluntary petition in bankruptcy wherein was scheduled the balance of the 1942 taxes yet unpaid.

The whole question here arises by reason of the fact that Congress, on June 9, 1943, passed the Current Tax Payment Act of 1943, 57 Stat. 126, 26 U.S.C.A.Int.Rev.Acts, page 385 et seq., which discharged "as of September 1, 1943  *  *  *" the balance of 1942 taxes then unpaid, if the liability of the particular taxpayer was greater for 1943 than for 1942.

Honorable Estes Snedecor, one of the exceptionally capable referees, held originally and again when the matter was re-referred upon specific questions by the court, that the claim must be denied. Unquestionably this must give us pause. Especially is this true where the creditors who are of first concern to a bankruptcy court will have percentages of recovery reduced and the bankrupt will not be required to pay the major portion of his income tax for 1943.

But in the construction of the bankruptcy and taxing acts strict legal doctrines must be applied to arrive at a result, rather than to obtain it by balancing doubtful theories of moralities.

If any of the following measures had been taken, the question would not have arisen. Platt might have postponed his increased income tax to 1944, for if his taxes for 1943 had been less than those for 1942, these latter would not have been subject to discharge. Platt might have paid the taxes before he filed the bankruptcy petition, and this act would have been valid and would have discharged liability for this sum on both years. The Government might have obtained payment for its claim before September 1, 1943, by petition to the referee in view of the undoubted priority over general creditors. Any of these legal methods would have ended the controversy.

Then again, courts are prone to look upon that which should have been done as actually accomplished. If the bankruptcy estate had been settled before September 1, 1943, this amount would have been paid to the United States. Of course, the estate could not have been closed in fact, because the required periods of time for taking action herein could not expire before that date. However, if all liabilities could have been known as of the date of filing of the petition, and distribution made then, the liability would have been discharged by payment. Particularly is this true since the United States had a lien against the assets.

The overwhelming reasons why the claim of the United States must be allowed are two: First, the taxing act was passed for two purposes, one was to assure the United States of the collection of certain amounts from each taxpayer for 1942 and 1943, and the second was to benefit the taxpayer once such amount was paid. An intention, actual, constructive or hypothetical, to release a bankruptcy estate from a liability for taxes set out in the income tax return, due and payable on March 15, 1943, for which the United States was given priority and for the payment of which there was a lien in its favor sufficient to assure payment, cannot be discovered. Indeed, it cannot be said that Congress had in contemplation affecting the Acts relating to bankruptcy or disturbing any relations thereunder by the passage of this statute relating solely to taxation. The fundamental right of the United States to collect taxes from the most available source should not be sacrificed for considerations of doubtful expediency applicable only to this particular case. Second, the doctrine upon which all of the structure of the bankruptcy law stands is that of the fixation of rights by filing of the petition. From this date all computations of time run backwards and forwards. On this date, there is a fund created in which priorities and liens are recognized but in which creditors share equally after the expenses of administration. Liens and priorities are on that date created and on that date others are destroyed. The trustee is vested with rights at that time in the property of the bankrupt and given extraordinary powers in connection therewith. These often work to the serious disadvantage of creditors, who are attempting to protect themselves. See In re Western Bond & Mortgage Co., D.C., 44 F.Supp. 89, affirmed Bank of California, National Ass'n v. McBride, 9 Cir., 132 F.2d 769.

The claim of the United States must be allowed because no other solution squares with this axiom of bankruptcy law.